**R.L. LIPTON DISTRIBUTING COMPANY (85–3921), Ohio Valley Beer Company, Inc. (86–3209), Plaintiffs-Appellants,**

v.

**DRIBECK IMPORTERS, INC., Defendant-Appellee.**

Nos. 85–3921, 86–3209.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 7, 1986.

Decided Feb. 17, 1987.

Bernard S. Goldfarb, Mark V. Webber, argued, Carl E. Cormany, Goldfarb & Reznick, Cleveland, Ohio, for R.L. Lipton Distributing Co.

Daniel J. Temming, Cincinnati, Ohio, for Ohio Valley Beer Co., Inc.

Gregory Mohar, Cincinnati, Ohio, Ronald L. Barnard, argued, Chicago, Ill., Donald M. Robiner, Paul F. Levin, Cleveland, Ohio, for Dribeck Importers, Inc.

Before LIVELY, Chief Judge,
MARTIN and BOGGS, Circuit Judges.

BOYCE F. MARTIN, Jr., Circuit Judge.

R.L. Lipton Distributing Company and Ohio Valley Beer Company seek to persuade this Court that the district courts erred in finding that they lacked personal jurisdiction over Dribeck Importers, Inc. in these two diversity actions based on the Ohio Alcoholic Beverages Franchise Act. Ohio Rev.Code 1333.82 *et seq.* The two beer distributors, Lipton and Ohio Valley, had sued Dribeck, the importer for Beck's Beer, for breach of the Ohio Act by terminating a franchise allegedly protected by the Act. Both district courts dismissed the actions for lack of personal jurisdiction over Dribeck. We agree that Dribeck was for purposes of these actions not subject to personal jurisdiction in Ohio and affirm the district courts.

## I.

Dribeck Importers, Inc., a Delaware corporation with its principal place of business in Connecticut, is the sole United States importer of Beck's Beer. Before September of 1979, R.L. Lipton purchased Beck's Beer directly through Dribeck. In 1979 Dribeck changed its marketing system. Dribeck and Heileman Brewing Company entered into a contract in which Dribeck appointed Heileman as its sole and exclusive distributor in Ohio and several other states. This agreement created a seller-buyer relationship between Dribeck and Heileman. It authorized Heileman to appoint subdistributors and prohibited Dribeck from selling Beck's Beer within Heileman's territory except to Heileman. Under this agreement, Heileman bought Beck's Beer from Dribeck and resold it to subdistributors at a higher price; Dribeck exercised no control over Heileman's prices.

Heileman executed an agreement appointing Lipton as the subdistributor for Beck's Beer in Cuyahoga County, Ohio in the fall of 1979. Lipton thereafter ordered Beck's Beer from Heileman. All of Lipton's orders were delivered to Heileman F.O.B. port of entry in the United States. A customs broker would notify Heileman or Lipton of the container's arrival and Heileman, the broker or Lipton would arrange for a common carrier to deliver the container to Heileman or directly to Lipton. Lipton paid the cost of transportation via common carrier. Dribeck played no role in receiving Heileman ordered beer at the port of entry, in helping it clear customs or in delivering it to Lipton or other Ohio subdistributors.

After Heileman assumed the role of Dribeck's distributor in the fall of 1979, Lipton never placed any orders for Beck's Beer directly with Dribeck nor did Dribeck sell any directly to Lipton. The only direct contact between Dribeck and Lipton consisted of occasional Dribeck promotional mailings and one or two visits to Ohio over five years by Dribeck sales personnel to meet with representatives of Heileman and Heileman's subdistributors.

During the spring of 1984, Heileman appointed Ohio Valley Beer Company as the wholesale distributor of Beck's Beer for Hamilton County and the Ohio cities of Milford, Loveland and Branch Hill. The relationship was apparently much the same as that between Heileman and Lipton. As under the Heileman-Lipton contract, the Heileman-Ohio Valley relationship was simply that of seller and buyer, with either

party having the right to cancel the relationship without cause by giving thirty days' written notice.

In late summer 1985, Dribeck notified Heileman that it was not renewing the multi-state distribution agreement. It planned to return to its former marketing strategy of dealing directly with local distributors like Lipton and Ohio Valley. Heileman in turn notified Lipton and Ohio Valley that it was cancelling the Beck's Beer distribution agreements. Dribeck did not choose to use either Lipton or Ohio Valley after this change.

Lipton brought an action against Dribeck in the United States District Court for the Northern District of Ohio, and Ohio Valley did the same in the United States District Court for the Southern District of Ohio. They both asserted that they had franchises with Dribeck that were terminated in violation of the Ohio Alcoholic Beverages Franchise Act. Ohio Rev.Code 1333.82 *et seq.* Heileman was not a party to either of these actions. Both district courts found that they lacked personal jurisdiction over Dribeck and dismissed the suits. Lipton and Ohio Valley's actions were joined on appeal where the two subdistributors argue that the district courts erred in finding no personal jurisdiction.

## II.

■ In examining whether jurisdiction exists, a federal court sitting in diversity must look to the forum state's long-arm statute and must construe that statute within the bounds of the due process clause. *See In-Flight Devices Corp. v. Van Dusen Air, Inc.*, 466 F.2d 220, 224 (6th Cir.1972); *Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374 (6th Cir.1968). The Ohio long-arm statute permits a court to "exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's ... [t]ransacting any business in this state...." Ohio Rev.Code § 2307.382(A)(1).

■ This Ohio statute has been construed to extend to the outer limits of due process, *see In-Flight Devices*, 466 F.2d at 225, and thus an Ohio personal jurisdiction analysis becomes an examination of constitutional limitations. A federal court sitting in diversity may exercise personal jurisdiction within the limits of the due process clause only so long as the defendant has minimum contacts with the forum state— contacts substantial enough as not to offend traditional notions of fair play and substantial justice. *National Can Corp. v. K Beverage Co.*, 674 F.2d 1134, 1136 (6th Cir.1982) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980)). We have identified three criteria that must be satisfied in determining whether a non-resident defendant has had sufficient contacts with the forum state to support personal jurisdiction. "First, the defendant must purposefully avail himself of the privilege of acting in the forum state.... Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum to make the exercise of jurisdiction over the defendant reasonable." *Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d at 381 (footnote omitted).

## III.

■ Considering the small number of Dribeck's contacts with the state of Ohio during the time that the alleged franchise relationship developed, Lipton and Ohio Valley's claims that personal jurisdiction exists must be rejected. Dribeck has availed itself of the privilege of acting in Ohio since the fall of 1985 when it began to deal directly with local distributors. But before that date, during the time that the alleged franchise developed, Heileman had the exclusive distribution rights for Beck's Beer in Ohio and Dribeck's contacts with Ohio were at most tangential. Thus, the arguments for extending jurisdiction fail at the second stage of the *Mohasco* test; the cause of action does not arise from Dribeck's contacts with Ohio.

Lipton and Ohio Valley assert that Dribeck transacted business in Ohio during the time of the alleged franchise arrangement, but Dribeck maintained no offices or employees in Ohio, accepted no orders from the state and made no deliveries there. They argue that Dribeck itself had direct contacts with them within Ohio and point to several promotional mailings and one or two visits during five years by Dribeck personnel. These sporadic and insubstantial contacts by themselves cannot support a finding of personal jurisdiction.

Lipton and Ohio Valley also attribute their business transactions with Heileman to Dribeck, arguing that Heileman, who is not a party to this action, was merely an agent for Dribeck. But Dribeck had little, if any, control over Heileman. Heileman bought supplies from Dribeck and sold them to subdistributors. Lipton and Ohio Valley's Beck's Beer contracts were with Heileman—they sent all orders to Heileman, paid Heileman's price and arranged for delivery through either Heileman or a customs broker. The distributor agreement allowed Heileman to appoint any subdistributor it chose; under that authority Heileman gave subdistributor rights to Lipton and Ohio Valley, but was of course free to give those rights to others. Heileman's status was that of an independent contractor and we cannot attribute its conduct and contacts to Dribeck. *See Fisher v. United States,* 356 F.2d 706, 708 (6th Cir.), *cert. denied,* 385 U.S. 819, 87 S.Ct. 41, 17 L.Ed.2d 57 (1966) (stating general rule to determine whether a relationship is that of independent contractor).

Because the cause of action does not arise from Dribeck's contacts with Ohio, both district court judgments dismissing the cases for lack of personal jurisdiction over Dribeck are affirmed.