UNITED LIBERTY LIFE INSURANCE
COMPANY, Plaintiff,

v.

Timothy RYAN, Director, Office
of Thrift Supervision, et al.,
Defendants.

No. C–1–91–0037.

United States District Court,
S.D. Ohio, W.D.

Aug. 2, 1991.

**368**

Michael Siegler, Mariann Yevin, Cincinnati, Ohio, for plaintiff.

Eliz. Mattingly, Joe Vahlsing, Stuart Dornette, Cincinnati, Ohio, for defendants.

## ORDER

### CARL B. RUBIN, District Judge.

This matter is before the Court upon motions to dismiss or in the alternative for summary judgment filed by defendants Timothy Ryan, Director of Office of Thrift Supervision ("OTS"), the Resolution Trust Corporation ("RTC"), the Federal Deposit Insurance Corporation ("FDIC"), and Pinnacle West Capital Corporation ("Pinnacle West").[1] (See Doc. Nos. 8, 11, 13, 14). Plaintiff United Liberty Life Insurance Company ("United Liberty") opposes defendants' motions (Doc. Nos. 12, 26) and defendants have replied. (Doc. Nos. 21, 33, 34, 35).

### The Parties

Plaintiff United Liberty is an Ohio corporation with offices in Cincinnati, Ohio. Defendant OTS, an office within the Department of the United States Treasury, is vested with power to regulate the savings and loan industry. 12 U.S.C. §§ 1462a, 1463. OTS is a creature of statute. Through the passage of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), Pub.L. No. 101–73, 83 Stat. 183 (1989) (codified at various sections of Titles 12 and 15), Congress eliminated both the Federal Savings and Loan Insurance Corporation ("FSLIC") and the Federal Home Loan Bank Board

("FHLBB"). OTS assumed the regulatory functions of FSLIC and FHLBB while FDIC assumed the insurance functions of these agencies, though some functional overlap between OTS and FDIC's duties does exist. *See First Federal Sav. Bank and Trust v. Ryan,* 927 F.2d 1345, 1347 (6th Cir.1991). Defendant RTC is an instrumentality of the United States, created pursuant to § 501(a) of FIRREA, 12 U.S.C. § 1441a(b). RTC succeeded FSLIC as assistor, conservator and receiver of certain troubled banking institutions. Defendant FDIC, also an instrumentality of the United States, is charged with the duties of regulator, insurer and receiver of banking institutions. 12 U.S.C. § 1811 et seq.

Pinnacle West, formerly known as AZP Group, Inc. ("AZP"), is a corporation existing under the laws of Arizona. Plaintiff alleges that the Individual Defendants were, at the times relevant to the amended complaint, officers and/or directors of Pinnacle West. Pacholder Associates, Inc. ("Pacholder") is an Ohio corporation which acted as the exclusive investment advisor to plaintiff. Plaintiff named Pacholder as a defendant in its amended complaint but has since dismissed it from this action pursuant to Federal Rule of Civil Procedure 41(a)(1)(i). (Doc. No. 16).

Plaintiff alleges that MeraBank Federal Savings Bank ("MeraBank Federal") is a mutual savings bank that was chartered under the authority of OTS. MeraBank Federal allegedly was chartered to assume all of the assets, deposits and liabilities of MeraBank, a federally chartered savings bank located in Arizona. RTC has been appointed as conservator of MeraBank Federal. Neither MeraBank Federal nor MeraBank has been named a party to this action.

### Claims of Plaintiff

Plaintiff United Liberty brought this action against the remaining defendants

---

**1.** Defendants Richard Snell, Henry B. Sargent, Jr., Karl Eller, Pamela Grant, John R. Norton, III, Donald N. Soldwedel, Maurice R. Tanner, Keith L. Turley, Douglas J. Wall, and Faye Widenman, hereinafter referred to as the "Individu-

al Defendants", were all either officers and/or directors of Pinnacle West during the time period relevant to the amended complaint. The Individual Defendants joined in Pinnacle West's motion.

alleging: (1) deprivation of its Fifth Amendment rights under the United States Constitution; (2) violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq. ("RICO"); (3) bond fraud; (4) breach of contract; and (5) violations of the Arizona Consumer Fraud Act, A.R.S. § 44–1522 A. United Liberty premises its causes of action on the following factual allegations.

Pinnacle West acquired MeraBank as a subsidiary through a stock-purchase effective December 16, 1986. Pursuant to Pinnacle West's acquisition of MeraBank, a stipulation setting the capital reserve requirements for MeraBank ("Stipulation") was required by the FHLBB and dated December 10, 1986. The Stipulation obligated Pinnacle West, in the name of its predecessor, AZP, to maintain the capital level of MeraBank in accordance with applicable federal regulations and to infuse, when necessary, additional equity capital to achieve such compliance. The existence and terms of the Stipulation were reported "in the annual reports of Pinnacle West at all times relevant hereto." Amended Complaint ¶ 15.

United Liberty further alleges that on or about August 27, 1987, Pacholder purchased for plaintiff's account MeraBank Sixteen Percent Subordinated Debentures due in 1996 ("Debentures") with a face amount of $500,000.00, at a premium totaling $101,500.00 including interest of $14,000.00.[2] In October of the same year, United Liberty allegedly "instructed Pacholder not to make further investments in any savings and loan entities." Amended Complaint ¶ 17. Despite these instructions, in October, 1987, Pacholder purchased additional Debentures for plaintiff's account with a face amount of $500,000.00, at a premium of $96,944.44 including interest of $24,444.44. United Liberty alleges that when it questioned Pacholder about the second purchase of the Debentures, "Pacholder misleadingly informed Plaintiff that the Stipulation disclosed in the annual reports of Pinnacle West meant that the Debentures were guaranteed by the largest utility in Arizona." Amended Complaint ¶ 18.

On December 6, 1989, Pinnacle West and OTS entered into a settlement agreement ("Settlement Agreement") whereby OTS agreed to release Pinnacle West from its obligations to MeraBank, including any obligations it had pursuant to the Stipulation, upon (1) a cash payment by Pinnacle West to MeraBank in the amount of $300,000,000.00 plus interest ("Cash Payment"); and (2) the execution of a promissory note by Pinnacle West in favor of MeraBank in the amount of $150,000,000.00 ("Note"). Pursuant to the Settlement Agreement, Pinnacle West executed a waiver of its right to challenge the appointment by OTS of a receiver or conservator of MeraBank. MeraBank was placed in receivership and RTC was appointed its receiver on January 31, 1990. On that same date, a Purchase and Assignment Agreement was executed by RTC and MeraBank Federal whereby the latter acquired the assets of MeraBank without assuming the obligations of MeraBank under the Debentures and the Indenture.

Plaintiff further alleges that on March 22, 1990, Pinnacle West delivered to RTC the Cash Payment and the Note. OTS, RTC and FDIC subsequently released Pinnacle West from any obligations arising from the Stipulation.

In Count One of the Amended Complaint, United Liberty alleges that it purchased the Debentures in reliance upon the terms of the Stipulation. Plaintiff charges that the execution of the Settlement Agreement and the related releases by Pinnacle West, OTS, RTC and FDIC substantially impaired the value of the Debentures, constituting an improper taking of plaintiff's property without due process of law in violation of the Fifth Amendment. Plaintiff further alleges that by placing MeraBank in receivership and executing the Purchase and As-

---

**2.** Plaintiff alleges that the Debentures were issued pursuant to an Indenture between MeraBank and the Valley National Bank of Arizona as Trustee dated June 30, 1984 ("Indenture"). Plaintiff states that Manufacturers Hanover Trust Company of California subsequently became Successor Trustee under the Indenture.

signment Agreement, OTS and RTC breached the Indenture, thereby causing further deterioration in the value of the Debentures which allegedly constitutes a second unconstitutional taking of plaintiff's property.

Count Two charges Pinnacle West and the Individual Defendants with violation of §§ 1961, 1962(b) and 1962(c) of RICO through the issuance of misleading annual reports and the issuance and sale of Debentures. Plaintiff alleges that these defendants aided, abetted or engaged in a pattern of unlawful activities consisting of: (1) fraud in the sale of debentures in violation of 15 U.S.C. § 78j(b), 78t, 78aa, and 78cc; (2) mail and wire fraud in connection with offers and sales of debentures in violation of 18 U.S.C. §§ 1341 and 1343; and (3) interference with and racketeering in interstate commerce in violation of 18 U.S.C. §§ 1951 and 1952.

United Liberty asserts in Count Three that Pinnacle West, the Individual Defendants and Pacholder committed fraud on plaintiff in connection with its purchase of the Debentures and/or committed fraud in the secondary market in which the Debentures were offered, sold and resold. Counts Four and Five allege claims for breach of contract. In Count Four, United Liberty contends it was "a third-party beneficiary of the Stipulation; and that Plaintiff relied upon the Stipulation in making its purchase of the Debentures." Amended Complaint ¶ 43. United Liberty asserts that OTS, RTC and FDIC breached "the Stipulation, a valid contract upon which Plaintiff was induced to rely to its detriment" when these defendants released Pinnacle West from the Stipulation and when OTS entered into the Settlement Agreement with Pinnacle West. Amended Complaint ¶¶ 44, 45.

Count Five charges RTC with breach of the Indenture through the transfer of the assets of MeraBank into MeraBank Federal without the concomitant transfer of Mera-Bank's obligations under the Indenture. United Liberty also alleges that RTC breached the Indenture by defaulting "in the payments of installments of interest due and payable with respect to the Debentures." Amended Complaint ¶ 49. Plaintiff further contends in Count Five that RTC and "OTC [sic] have control of the funds transferred into MeraBank Federal from MeraBank and paid into MeraBank by Pinnacle West pursuant to the Settlement Agreement" and that such transfer and payment of funds have been made to the detriment of United Liberty.

Count Six contains allegations that Pinnacle West and the Individual Defendants violated Arizona Consumer Fraud Act, A.R.S. § 44–1522 A by the use of misrepresentations or omissions of material facts in its annual reports. Count Seven, charging Pacholder with negligence, did not survive the dismissal of Pacholder from this action.

United Liberty seeks damages in the form of monetary relief against Pinnacle West and the Individual Defendants. As against OTS, RTC and FDIC, United Liberty requests: (1) a judgment declaring that these defendants' actions violated plaintiff's due process rights under the Fifth Amendment; (2) a permanent injunction forbidding any such future violations; and (3) that an "order in the nature of a mandamus issue to cause the OTS, RTC and/or FDIC as necessary to require Pinnacle West to uphold its equity capital and capital infusion obligations under the Stipulation." Amended Complaint at 16.

### Summary Judgment

Defendants move for dismissal of plaintiff's claims or in the alternative for entry of summary judgment in their favor. Because defendants and plaintiff rely on matters outside the pleadings, the pending motions shall be treated as motions for summary judgment and examined in light of that standard. The summary judgment procedure under Federal Rule of Civil Procedure 56 is designed to secure a just, speedy, and inexpensive determination of any action. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). However, Rule 56(c) permits the Court to grant summary judgment as a matter of law *only* after the moving party has identified as the basis of

its motion "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" which demonstrate the absence of any genuine issue of material fact. *Id* at 323, 106 S.Ct. at 2552. The party opposing a properly supported motion for summary judgment "may not rest upon mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) *quoting, First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968). The evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513 *citing, Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The function of the court is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510. There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Id. citing Cities Service*, 391 U.S. at 288–289, 88 S.Ct. at 1592. If the evidence is merely colorable, *Dombrowski v. Eastland*, 387 U.S. 82, 87 S.Ct. 1425, 18 L.Ed.2d 577 (1967) or is not significantly probative, *Cities Service*, 391 U.S. at 290, 88 S.Ct. at 1593, judgment may not be granted. *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510.

### OTS, RTC and FDIC

OTS, RTC and FDIC raise some common arguments in support of their motions for summary judgment. While OTS argues that the Stipulation does not constitute a valid contract, all three governmental entities contend that, even if the Stipulation is construed to be a contract, plaintiff is not a third-party beneficiary of it. Therefore, defendants argue that plaintiff's breach of contract claims are without merit and, further, that no unconstitutional taking occurred since plaintiff did not have a pro-tected property interest in the Stipulation. RTC and FDIC also assert that plaintiff lacks standing to maintain this lawsuit. OTS maintains that the United States Claims Court has exclusive jurisdiction over plaintiff's contract and takings claims and it urges this Court to decline the exercise of jurisdiction over this action.

United Liberty counters that the federal district court has jurisdiction over its claims, that it has standing to maintain this action, and that the Stipulation and Indenture are valid contracts conferring third-party beneficiary rights upon plaintiff. United Liberty also contends that plaintiff's protected property interest in the Stipulation and the Indenture derives from OTS, FDIC and RTC's responsibility to enforce the source of strength doctrine discussed below.

### 1. Jurisdiction and The Tucker Act

■ OTS urges this Court to decline the exercise of jurisdiction over plaintiff's claims on the grounds that these claims are governed by the Tucker Act, 28 U.S.C. § 1491 and exclusive jurisdiction lies in the United States Claims Court. § 1491 provides in pertinent part:

> The United States Claims Court shall have jurisdiction to render judgment upon a claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

Plaintiff maintains that this Court has federal question jurisdiction over its claims pursuant to 28 U.S.C. § 1331 and that the federal government waives sovereign immunity under § 1331 in the Administrative Procedure Act ("APA"), 5 U.S.C. § 702. While the relationship between § 702 of the APA and § 1491 of the Tucker Act is the subject of some confusion, *see* Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 4101 at 317 (1988), the United States Court of Appeals for the Sixth Circuit has recently made clear that

"if an action rests within the exclusive jurisdiction of the Claims Court under the Tucker Act, 28 U.S.C. §§ 1346 and 1491, the district court does not have jurisdiction regardless of other possible statutory bases." *A.E. Finley & Associates, Inc. v. U.S.*, 898 F.2d 1165, 1167 (6th Cir.1990). The Court's inquiry should begin with an examination of the applicability of the Tucker Act.

■■■ The Claims Court has exclusive jurisdiction over actions brought against governmental agencies (1) seeking monetary relief in excess of $10,000, *and* (2) founded upon the Constitution, federal statute, executive regulation, or governmental contract. *Hamilton Stores, Inc. v. Hodel*, 925 F.2d 1272, 1277 (10th Cir.1991). The second prong of this jurisdictional test is clearly satisfied in this action. Plaintiff explicitly alleges a cause of action for breach of contract against OTS, RTC and FDIC and, in Count One, plaintiff asserts that defendants' conduct violated its constitutional rights. The first prong of this test, however, is not met here. Despite a valiant attempt by OTS to convince the Court otherwise, plaintiff does not seek as a remedy money damages against any governmental agency. While a plaintiff may not circumvent the strictures of the Tucker Act by requesting declaratory or injunctive relief which is the equivalent of a judgment for money damages, *A.E. Finley*, 898 F.2d at 1167, if the "prime objective" of plaintiff's claims is not to obtain monetary relief from the federal government, the district court may exercise jurisdiction over them. *See Hamilton Stores*, 925 F.2d at 1278. Because United Liberty seeks solely equitable remedies against OTS, RTC and FDIC, the Claims Court does not have exclusive jurisdiction over this action. This Court's exercise of jurisdiction over plaintiff's claims against these defendants is proper.

### 2. The Issue of Standing

■■■ United Liberty's standing to maintain this action is disputed by RTC and FDIC. In *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982), the United States Supreme Court set forth the threshold test a plaintiff must meet to establish she has standing to bring suit. To assert a cause of action, a plaintiff must demonstrate:

1. that she personally has suffered some actual or threatened injury;

2. that the injury fairly can be traced to the challenged action; and

3. that the injury is likely to be redressed by a favorable decision.

*Id.* at 472, 102 S.Ct. at 758. RTC and FDIC contend that United Liberty cannot meet any element of this test.

First, United Liberty points to an actual economic injury, namely the devaluation of the Debentures. Second, the devaluation of the Debentures may be fairly traced to the capitalization by Pinnacle West of MeraBank, which forms the core of plaintiff's amended complaint. Third, should plaintiff prevail on its claims, a remedy in which adequate capitalization of MeraBank Federal was required could improve the value of the Debentures. United Liberty satisfies all three elements of the standing test. Plaintiff has standing to bring this suit.

### 3. The Contract Claims

■ In Counts Four and Five, United Liberty alleges that the Stipulation and the Indenture are valid contracts and that defendants' conduct breached these agreements. OTS, FDIC and RTC urge the Court to rule as a matter of law that the Stipulation and the Indenture are not contracts, rendering plaintiff's breach of contract claims without merit.

First, the Stipulation entered into by AZP, Pinnacle West's predecessor, was not a contract but the satisfaction of a condition set forth in FHLBB's resolution approving the application of AZP to acquire MeraBank. *See* FHLBB Resolution Regarding the Acquisition of MeraBank by AZP ¶ 6 dated 12/8/86.[3] While United Lib-

---

**3.** The Resolution mandates "[t]hat AZP shall       stipulate to the Corporation that as long as it

erty insists that the Stipulation constitutes a contract between Pinnacle West and OTS, RTC and FDIC, plaintiff cites no authority to support this view. Several courts have examined the issue of whether a capital maintenance commitment given by a holding company of a savings and loan constitutes a valid contract. In *In re Conner Corporation*, 1990 WL 124052, 1990 Bank. LEXIS 1751 (Bankr.E.D.N.Y.1990), a failed savings and loan association brought suit against its holding company alleging that the holding company breached a contract with FHLBB to maintain the net worth of the savings and loan at a specified level. *Id.* 1990 WL 124052 at 4, 1990 Bank. LEXIS 1751 at 4. The bankruptcy court noted that FHLBB resolution approving the savings and loan association's application for deposit insurance contained a condition subsequent requiring a capital maintenance commitment from the holding company of the savings and loan. The *Conner* Court stated what is axiomatic in the law of contracts: that a contract is the result of an offer and an acceptance resulting in a meeting of the minds of the parties supported by a mutual exchange of appropriate consideration. *Id.* The capital maintenance commitment given by the holding company failed to satisfy these requirements and, therefore, did not create an agreement between the parties:

> The series of resolutions and the conduct of the parties does not give rise to a contract between Conner [the holding company] and FHLBB ... The intention of FHLBB was to require Conner to submit to the jurisdiction and regulatory powers of FHLBB. Likewise, Conner's resolution to file the necessary application and to maintain Cardinal's net worth was never intended by Conner to be an "offer" or "acceptance" so as to give rise to a contract between the parties:

*Id.* The *Conner* Court further found that even if the parties intended to create a contract, no such contract was formed because of a lack of consideration:

> There was no consideration from FHLBB to Conner or Cardinal to support Conner's "agreement" to maintain Cardinal's net worth. Such "agreement" was merely a part of the process of applying for federal insurance on the deposits in the subsidiary. FHLBB was doing what it was required to do under the law and its regulations. Likewise, Conner was simply complying with the regulatory requirements of FHLBB ... A promise to perform an act which promisor is already bound to perform is insufficient consideration for a promise by the other party. [citations omitted].

*Id.* 1990 WL 124052 at 4, 1990 Bank. LEXIS 1751 at 4–5.

In *RTC v. Tetco*, 758 F.Supp. 1159 (W.D.Tex.1990), the district court held that a holding company's stipulation to maintain the net worth of a savings and loan association did not constitute a valid contract. The *Tetco* Court, finding that no meeting of the minds occurred, ruled that the net worth condition in the FHLBB resolution was not a contract but a statement setting forth a regulatory condition with which the holding company complied in its subsequent stipulation. *Id.* at 1162; *see also RTC v. Savers*, 1990 WL 290314 at 1, 1990 U.S.Dist.LEXIS 10294 at 2 (D.Ark.1990) ("... plaintiff had no contract with defendant to maintain the net worth of Savers Federal Savings and Loan Association ... because defendant was already required by law to comply with the regulation.")

The reasoning of these cases is dispositive in this action. AZP, predecessor in interest to Pinnacle West, sought to acquire MeraBank and, to that end, undertook to comply with the federal regulations governing the acquisition. FHLBB approved the acquisition subject to AZP's fulfillment of certain conditions contained in the FHLBB Resolution. One such condition was the execution of a stipulation by AZP to maintain the capital level of MeraBank in accordance with applicable federal regulations and to infuse MeraBank with capital as necessary to achieve such compli-

---

controls MeraBank, AZP will cause the net worth of MeraBank to be maintained at a level consistent with that required by Section 563.13

of the Insurance Regulations ... and, as necessary, will infuse sufficient additional equity capital ...".

ance. The obvious intention of AZP was to acquire control of MeraBank; FHLBB intended to ensure that the acquisition was governed by the appropriate federal regulations. In complying with the regulatory agency's conditions, AZP did not make an offer nor did it accept an offer from FHLBB. There was not a meeting of the minds between the parties as contemplated by the principles of contract formation. Further, the capital maintenance condition contained in the FHLBB Resolution was a legal requirement AZP undertook to perform—the Stipulation had no underlying consideration. The Stipulation does not constitute a contract and, accordingly, plaintiff may not maintain a breach of contract claim premised upon it.

■ In Count Five, United Liberty asserts that OTS and RTC transferred funds into MeraBank Federal from MeraBank and Pinnacle West to the detriment of plaintiff. United Liberty also alleges that RTC breached the Indenture by failing to transfer the obligations of MeraBank under the Indenture into MeraBank Federal. First, plaintiff fails to establish that the Indenture was a valid contract; nor does it demonstrate how it derives contractual rights from the Indenture. Second, RTC acted within the broad congressional mandate given it to manage those institutions, such as MeraBank, placed in receivership when it oversaw the transfer of funds from MeraBank and Pinnacle West into MeraBank Federal. RTC correctly notes that it is afforded discretionary authority pursuant to 12 U.S.C. § 1441a(b)(3)(C) as amended by FIRREA to conduct its operations so that it "maximizes the net present value return from the sale or other disposition of institutions ... or the assets of such institutions." RTC is also accorded by statute the ability to exercise "such incidental powers as are necessary to carry out its duties and functions under this section." § 1441a(b)(10)(N) of 12 U.S.C. United Liberty fails to demonstrate what legal obligations RTC had with respect to the Indenture given its wide scope of authority to manage the assets of MeraBank once it was placed under receivership. The breach

of contract claims in Count Five are without merit.

### 4. The Takings Claims

■ United Liberty contends in Count One of the amended complaint that the execution of the Settlement Agreement and the related releases by Pinnacle West, OTS, FDIC and RTC constitute an unconstitutional taking of plaintiff's property in violation of the Fifth Amendment. Plaintiff also alleges that the placement of MeraBank in receivership and the execution of the Purchase and Assignment Agreement by OTS and RTC deprived plaintiff of its property without due process of law. United Liberty admits that its Fifth Amendment claims rest upon its contention that the Stipulation is a source of property rights for plaintiff. United Liberty argues that it has a protected property interest in the Stipulation based on the source of strength doctrine. The unconstitutional takings allegedly occurred when OTS, RTC and FDIC failed to consistently enforce this doctrine by releasing Pinnacle West from its obligations under the Stipulation and the Indenture.

In *Connolly v. Pension Benefit Guaranty Corp.*, 475 U.S. 211, 106 S.Ct. 1018, 89 L.Ed.2d 166 (1986), the United States Supreme Court eschewed "the development of any set formula for identifying a 'taking' forbidden by the Fifth Amendment," stating that the inquiry should be based on the individual facts and circumstances of each case. *Id.* at 224, 106 S.Ct. at 1025. Nevertheless, the Supreme Court identified three factors to consider: (1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with reasonable investment-backed expectations; and (3) the character of the governmental action. *Id.* at 225, 106 S.Ct. at 1026. The parties agree that these factors should serve as a framework for the Court's inquiry.

The source of strength doctrine upon which plaintiff relies is derived from the Bank Holding Company Act ("BHCA"), 12 U.S.C. § 1841 et seq. which mandates that a company must gain the approval of the

Federal Reserve Board ("FRB") prior to becoming a bank holding company. 12 U.S.C. § 1842(a). Section 3(c) of the BHCA directs that the FRB shall in every case "take into consideration the financial and managerial resources and future prospects of the company or companies and the bank concerned." 18 U.S.C. § 1842(c). In 1984, the FRB revised Regulation Y, adding 12 C.F.R. § 225.4(a)(1) which provides in part that "[a] bank holding company shall serve as a source of financial and managerial strength to its subsidiary banks ..." See *MCorp Financial v. Board of Governors,* 900 F.2d 852, 860 (5th Cir.), *reh'g denied, en banc,* 911 F.2d 730 (1990), *cert. granted,* — U.S. ——, 111 S.Ct. 1101, 113 L.Ed.2d 212 (1991) *citing* Revision of Regulation Y, 49 Fed.Reg. 820 (1984) (codified at 12 C.F.R. § 225.4(a)(1)). In a policy statement which took effect in April, 1987, the FRB stated that a bank holding company should "stand ready to use available resources to provide adequate capital funds to subsidiary banks ..." *MCorp,* 900 F.2d at 860 *citing* Policy Statement, 52 Fed.Reg. 15707, 15708 (1987).

In *Board of Governors of the Federal Reserve System v. First Lincolnwood Corp.,* 439 U.S. 234, 99 S.Ct. 505, 58 L.Ed.2d 484 (1978), the United States Supreme Court held that § 3(c) of the BHCA authorized the FRB to not approve transactions on the basis of financial or managerial unsoundness regardless of that condition's impact upon a proposed transaction. *Id.* at 252, 99 S.Ct. at 515. In *MCorp,* the United States Court of Appeals for the Fifth Circuit reviewed the teachings of *First Lincolnwood* and concluded:

> *First Lincolnwood* is narrowly written and expressly limits the Board's authority to consider financial and managerial soundness of subsidiary banks to the Board's decision to grant or deny a holding company's application. Section 3(c) of the BHCA specifically grants this authority to the Board. *The BHCA does not grant the Board authority to consider the financial and managerial soundness of the subsidiary banks after it approves the application, and First Lincolnwood finds this regulatory au-*

*thority lacking in the day-to-day operations of a subsidiary bank.*

*MCorp,* 900 F.2d at 861–2 (emphasis added). The Court of Appeals went on to rule that the FRB is without authority under the BHCA to require the holding company to transfer funds to its troubled subsidiary bank.

United Liberty urges this Court to find that the source of strength doctrine embodied in Section 3(c) of the BHCA and applied in *First Lincolnwood* grants plaintiff a protected property right in the Stipulation and the Indenture. Plaintiff's argument suffers from several defects. First, United Liberty cites no authority to support the application of the source of strength doctrine to savings bank holding companies. Federally chartered savings banks such as MeraBank are regulated not by the FRB but by OTS under 12 U.S.C. § 1463(a); *see also* 12 U.S.C. §§ 1462(4), 1813(b)(1) and (2). The regulations and policy directives issued by the FRB are not binding on OTS; plaintiff does not link the source of strength doctrine to the regulatory framework savings banks such as MeraBank are subjected to.

The only authority plaintiff points to is language in *Tetco* wherein the district court, distinguishing capital maintenance stipulations from regulatory forbearance agreements, notes that "promises to forebear from enforcing regulatory capital requirements involve substantial deviation from the regulations and potentially compromise the overriding policy of guaranteeing that holding companies will be a source of strength for their insured subsidiaries." *Id.* at 1164. The *Tetco* Court identifies the source of strength doctrine as an "overriding policy" of banking regulations; it does not construe the source of strength doctrine to be a source of property rights for investors in savings and loan associations.

Second, *First Lincolnwood* and *MCorp* together teach that while the FRB may consider the financial and managerial soundness of a subsidiary bank during the application process of a holding company, the FRB lacks the power to require a hold-

ing company to transfer funds to a troubled subsidiary bank. Even if plaintiff had gotten over its hurdle of demonstrating the applicability of the source of strength doctrine to savings and loan associations, *First Lincolnwood* and *MCorp* limit the doctrine and effectively eliminate the source of rights claimed by plaintiff under the Stipulation and the Indenture.

Third, under the *Connolly* analysis, plaintiff fails to establish an unconstitutional taking of its property. Plaintiff charges that it suffered economic loss because the FDIC, RTC and OTS failed to enforce the source of strength doctrine by releasing Pinnacle West from its obligations under the Indenture and the Stipulation. Plaintiff argues that defendants' conduct interfered with those investment-backed expectations which prompted the purchase of the Debentures.

■ The character of the governmental action, the execution of the Settlement Agreement and the related releases by defendants, does not constitute a taking of property since plaintiff has no property rights in the Stipulation and the Indenture. The source of strength doctrine does not create a cause of action for disgruntled investors seeking to mandate that savings bank holding companies maintain the capital requirements of its subsidiary banks by infusing additional capital. The Stipulation cannot be construed for that purpose. Further, the Stipulation is a statement of regulatory compliance; it is not a valid contract nor, by its own terms, may it be "enforced by any other party." Stipulation at 2. It is intended "solely for the benefit of the FSLIC and FHLBB." *Id.* Likewise, plaintiff possesses no protected interest in the Indenture. United Liberty simply owns the Debentures which were issued pursuant to the Indenture. Ownership of the Debentures does not bestow on plaintiff a property right in the Indenture itself.

■ The economic burden cited by plaintiff, the devaluation of the Debentures, is a loss of property to plaintiff but that loss is not attributable to an unconstitutional taking. Since plaintiff cannot demonstrate that it had a protected property interest in the Stipulation or the Indenture, defendants' conduct was not a taking regardless of the impact the Settlement Agreement or the releases had upon the value of the Debentures. Further, United Liberty's investment-backed expectations with respect to its purchase of the Debentures were not reasonable. Plaintiff alleges that Pacholder informed it that the Stipulation "meant that the Debentures were guaranteed by the largest utility in Arizona." Amended Complaint ¶ 18. Reliance by plaintiff on any alleged guarantees, property rights or contractual obligations created by the Stipulation or the Indenture was simply unreasonable and unwarranted given the nature of the Stipulation and the Indenture and the language contained therein.

Because plaintiff cannot demonstrate that it has a property right in the Stipulation or the Indenture, the takings claims have no basis. Count One is stricken from the Amended Complaint. In sum, those claims lodged against OTS, RTC and FDIC are without merit and, accordingly, are dismissed.

### *Pinnacle West and the Individual Defendants*

■ United Liberty charges that Pinnacle West and the Individual Defendants: (1) violated §§ 1961, 1962(b) and 1962(c) of RICO through the issuance of misleading annual reports and the issuance and sale of the Debentures (Count Two); (2) committed fraud on plaintiff in connection with the purchase or sale of the Debentures (Count Three); and (3) violated the Arizona Consumer Fraud Act, A.R.S. § 44–1522 A by the use and misrepresentations or omissions of material facts in Pinnacle West's annual reports (Count Six).[4] Before addressing the merits of plaintiff's claims, this Court must consider Pinnacle West and the Individual Defendants' contention

---

**4.** The Fifth Amendment takings claims in Count One lodged against Pinnacle West and the Individual Defendants as well as against RTC, FDIC and OTS fail as a matter of law for the reasons discussed herein.

that this Court lacks personal jurisdiction over them.

Both parties agree that this Court's exercise of in personam jurisdiction over a nonresident defendant must be examined in light of Ohio's long-arm statute, Ohio Revised Code § 2307.382, and its counterpart, Ohio Rule of Civil Procedure 4.3(A) and the limits of the Due Process Clause of the United States Constitution. *R.L. Lipton Distributing v. Dribeck Importers, Inc.,* 811 F.2d 967, 969 (6th Cir.1987). Because O.R.C. § 2307.382 has been construed to extend to the outer limits of due process, *R.L. Lipton,* 811 F.2d at 969 citing *In-Flight Devices Corp. v. Van Dusen Air, Inc.,* 466 F.2d 220, 224 (6th Cir.1972), the Court's inquiry is whether personal jurisdiction over Pinnacle West and the Individual Defendants may be effected within the bounds of the Due Process Clause. *Id.*

The United States Supreme Court outlined the constitutional limits of due process in the exercise of personal jurisdiction over a non-resident defendant in its seminal decision *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) wherein it stated:

> [D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."

*Id.* at 316, 66 S.Ct. at 158. The United States Court of Appeals for the Sixth Circuit has identified three criteria which must be met in order to satisfy the *International Shoe* test:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the

acts of the defendant or the consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Southern Machine Co. v. Mohasco Industries, Inc.,* 401 F.2d 374, 381 (6th Cir.1968).

The record demonstrates that Pinnacle West does not transact any business within the State of Ohio, is not registered to do business there, owns no property in Ohio, and owns no subsidiaries that regularly transact business within Ohio. The Individual Defendants are all residents of the State of Arizona, and in their corporate capacities have had no contacts with Ohio in connection with the allegations of the amended complaint. United Liberty does not refute these facts. Plaintiff rests its assertion of jurisdiction, in part, on its contention that it purchased the Debentures in reliance upon misleading information contained in Pinnacle West's 1986 Form 10–K filed with the Securities and Exchange Commission ("SEC") and that it also relied upon "similar misleading information concerning Pinnacle West's undertaking to maintain MeraBank's regulatory capital" published in Pinnacle West's 1987 and 1989 annual reports as well as in its SEC Form 10–K filings for those years.[5] United Liberty also contends that the exercise of personal jurisdiction over these defendants is warranted because:

> A debt obligation created in favor of an Ohio resident exists at bar in the form of Pinnacle West's guaranty of the MeraBank debentures through the Stipulation. The foreseeable economic injury caused by the complete repudiation of those obligations when done, as here, by a large, publicly listed and traded company, must be found *per se* to satisfy the first two prongs of *Mohasco* and thus, presumptively, its third prong as well.

Plaintiff's Memorandum in Opposition to Pinnacle West's Motion to Dismiss at 8.

---

**5.** United Liberty asserts that it obtained the misleading information from various agents of Pinnacle West who were authorized to market debentures and other securities of MeraBank. The only "agent" disclosed by plaintiff is Pac-

holder, identified in the amended complaint as plaintiff's exclusive investment advisor; the record is devoid of any allegations that Pacholder acted as an agent of any entity other than United Liberty.

The burden of establishing jurisdiction over a defendant rests squarely on the plaintiff. *Weller v. Cromwell Oil Company*, 504 F.2d 927, 929 (6th Cir.1974).

The "purposeful availment" requirement of *Mohasco* is the first and primary hurdle plaintiff must get over in order to establish jurisdiction. United Liberty must demonstrate that Pinnacle West and the Individual Defendants could have reasonably anticipated being haled into court in this forum. *LAK, Inc. v. Deer Creek Enterprises*, 885 F.2d 1293, 1300 (6th Cir.1989), *cert. denied*, — U.S. —, 110 S.Ct. 1525, 108 L.Ed.2d 764 (1990) *citing World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). Unilateral activity of a plaintiff who claims some relationship with a non-resident defendant cannot satisfy this test. *LAK*, 885 F.2d at 1301 *citing Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417, 104 S.Ct. 1868, 1873, 80 L.Ed.2d 404 (1984).

The contacts cited by United Liberty allegedly linking these defendants to this forum do not demonstrate that Pinnacle West or the Individual Defendants availed themselves of this forum nor are they in themselves sufficient to satisfy the "minimum contacts" criterion. First, plaintiff does not allege that Pinnacle West actually mailed annual reports to it in Ohio but rather it argues that it obtained such reports from its investment advisor, an Ohio concern. Allegations that Pacholder, United Liberty's agent, obtained annual reports or SEC filings for United Liberty does not evidence a purposeful availment of this forum by Pinnacle West or its officers or directors. Second, even if these defendants undertook to mail information to United Liberty, such bare contacts with Ohio are too sporadic and insubstantial to meet the "purposeful availment" test. *R.L. Lipton*, 811 F.2d at 970; *see also LAK*, 885 F.2d at 1301; *Serras v. First Tennessee Bank Nat. Ass'n*, 875 F.2d 1212, 1217 (6th Cir.1989) (while plaintiff's residency in the forum and an out-of-state defendant's telephone solicitation call to plaintiff are insufficient contacts, purposeful availment test is met where defendant traveled to forum to solicit business and made fraudulent representations while in the forum.)

United Liberty's plea to this Court to base jurisdiction on the creation of a debt obligation in favor of United Liberty, an Ohio resident, is also without merit. First, the Stipulation was not a guaranty of the Debentures and no rights thereunder inured to plaintiff. Second, the locus of the economic loss is irrelevant:

> Because the plaintiff was domiciled in Michigan, to be sure, the claimed injury to its purse might be said to have been suffered there—but the *locus* of such a monetary injury is immaterial, as long as the obligation did not arise from "a privilege the defendant exercised in [the forum state]."

*LAK*, 885 F.2d at 1302–3. The residency of the bond purchaser in the forum state does not justify the exercise of jurisdiction over a non-resident corporation who issued the bonds.

Plaintiff fails to meet its burden of establishing that Pinnacle West and the Individual Defendants purposefully availed themselves of the privilege of acting in Ohio or of causing a consequence in Ohio. Each criteria set forth in *Mohasco* is an independent requirement; failure to satisfy one of the three dictates that personal jurisdiction over a non-resident defendant may not be invoked. *Id.* at 1303. This Court lacks personal jurisdiction over Pinnacle West and the Individual Defendants and, accordingly, claims against these defendants must be dismissed.

## CONCLUSION

It is hereby ORDERED that the motions to dismiss or in the alternative for summary judgment filed by defendants OTS, RTC and FDIC are well-taken and are hereby GRANTED. The motion to dismiss filed by Pinnacle West and the Individual Defendants is also GRANTED. This action is hereby DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.