## CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE

McLeod, Alexander,
Powel & Apffel, P.C.

v.

Fred H. Quarles et al.

### Case No. (Chancery) 7580

BY JUDGE JAY T. SWETT

### March 5, 1992

On October 18, 1991, a copy of the default judgment entered against Fred H. Quarles, III, in the United States District Court of the Southern District of Texas, Galveston Division, was filed in this court pursuant to Va. Code § 8.01–465.3. The Clerk of this Court sent Notice of this filing to Mr. Quarles on October 24, 1991, at his last known address as stated in Mr. Hewitt's affidavit. It is alleged that the letter was not received by Mr. Quarles, being returned by the post office for the reason of unknown address on October 30, 1991.

On January 30, 1992, Mr. Quarles filed Motions to Reopen and to Set Aside Judgment by Default alleging the inadequate notice gave him no opportunity to challenge the docketing of the default judgment or the lack of jurisdiction of the Texas court.

For purposes of ruling on these motions, I ask the parties to address the following issues.

1. What are the time limits, if any, under Va. Code §§ 8.01–465.2 and 8.01–465.3 as to when a debtor may move to reopen, vacate, or respond to the filing of a foreign judgment?

2. If a debtor can show he had no notice of the filing of the foreign judgment, may he move to reopen or vacate under Va. Code § 8.01–428(A)(ii) on grounds that the Texas judgment was void for lack of personal jurisdiction even if the creditor can show he properly followed the requirements of § 8.01–465.3 of the Uniform Enforcement of Foreign Judgments Act?

### April 1, 1992

Having reviewed the responses to my letter of March 5, 1992, I have determined that this action shall proceed as follows.

The "Motion to Set Aside Judgment by Default" filed on behalf of defendant Quarles is deemed to be a motion filed under Va. Code § 8.01–428(A) in which defendant Quarles seeks to set aside a judgment entered by default. The default judgment was entered on August 23, 1990, by the United States District Court for the Southern District of Texas. The default judgment was thereafter docketed in the Charlottesville Circuit Court Clerk's Office under the Virginia Uniform Enforcement of Foreign Judgments Act, § 8.01–465.1 *et seq*. Section 8.01–465.2 provides that any foreign judgment filed is to be given the same effect and shall be "subject" to the same procedures, defenses, and procedures for reopening, vacating, or staying" as any judgment of this circuit court. This includes the right of the judgment debtor to initiate an action to set aside the default judgment under § 8.01–428(A).

I further conclude that plaintiff, McLeod, Alexander, Powel & Apffel has complied with the filing requirements of Va. Code § 8.01–465.3. I make no determination at this time of the significance, if any, that the notice sent by the Clerk of this Court dated October 24, 1991, was not sent to an address defendant Quarles used at the time the notice was sent. I further find that there are no time limitations pursuant to the Uniform Enforcement of Foreign Judgments Act that would bar the judgment debtor from invoking relief under § 8.01–428. However, the filing of a request for relief under § 8.01–428 does not, of itself, require this Court to take any action with regard to the filing of the foreign judgment in the Clerk's Office of this Court.

### July 1, 1992

The issue before the court is whether the defendant, Fred H. Quarles, has set forth proper grounds to proceed with a motion to set aside a default judgment rendered against him by a Texas court. The

Texas judgment was docketed in the Clerk's Office of this court pursuant to the Uniform Enforcement of Foreign Judgments Act, Va. Code § 8.01–465.1 *et seq.* In a letter opinion dated April 1, 1992, this court previously ruled that Quarles's motion to set aside the Texas judgment docketed in the Charlottesville Clerk's Office was a motion filed under Va. Code § 8.01–428(A). Evidence was taken on June 15, 1992. The testimony presented and the exhibits admitted into evidence established the following.

Sometime in the early 1980's, Fred H. Quarles was involved in the formation of Commonwealth Airlines, Inc. For reasons not relevant to this proceeding, Commonwealth Airlines, Inc., was named in a civil suit brought in a Texas court. The corporation retained the Galveston, Texas, firm of McLeod, Alexander, Powel & Apffel, P.C. (hereafter "McLeod, Alexander"). When McLeod, Alexander did not receive payment for its legal fees for representing Commonwealth Airlines, it filed suit to collect the fees in the District Court of Galveston County, Texas, and named Commonwealth Airlines, Inc., and Fred H. Quarles as defendants. Quarles filed an answer *pro se* in which he asserted that the Texas court was without personal jurisdiction over Quarles on the grounds that Quarles had insufficient contacts with the State of Texas and had never subjected himself to the jurisdiction of the Texas courts. In addition, Quarles removed the case to the United States District Court for the Southern District of Texas on the basis of diversity of citizenship.

After the case was removed to federal court, Mr. Gerson D. Bloom, a Galveston attorney, entered an appearance on behalf of Quarles. From July of 1987 to April of 1989, most of the activity in the federal suit involved disputes over discovery. The discovery disputes were referred by the District Court Judge to a Magistrate who eventually recommended that default judgment be entered in favor of the plaintiff and against Quarles for his failure to respond to the plaintiff's discovery requests. That opinion was affirmed by the United States District Court which entered a default judgment against Quarles in the amount sued for, $11,725.97, the amount claimed as unpaid attorney fees. The order on April 26, 1989, also stated that "All pending motions, if any, are denied as moot."

Quarles appealed the judgment to the United States Court of Appeals for the Fifth Circuit. In a published opinion, the Fifth Circuit affirmed

the default judgment. *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482 (5th Cir. 1990).

The case was remanded to the District Court. Quarles then filed a motion to vacate the judgment pursuant to Federal Civil Procedure Rule 60(b). That motion was denied. The District Court entered another order affirming the initial judgment and awarded an additional amount of $31,537.50 for attorney's fees and costs. This judgment was also appealed to the Fifth Circuit which again affirmed the District Court judgment. *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 925 F.2d 853 (5th Cir. 1991).

The issue here is a limited one. Under § 8.01–428(A), a default judgment may be set aside if the judgment is void. In Virginia, a judgment rendered over a defendant where the court is without personal jurisdiction over the defendant is a void judgment. *Dennis v. Jones*, 240 Va. 12, 19 (1990).

The Full Faith and Credit Clause of the Constitution of the United States requires that this Court respect, and, if requested, enforce a judgment entered in another state if the other state had jurisdiction over the parties and the subject matter of the case. *Bloodworth v. Ellis*, 221 Va. 18, 21 (1980). However, when the foreign judgment is challenged as void on the ground that the foreign court lacked personal jurisdiction over the defendant, then this court must inquire into the foreign court's jurisdiction and, in doing so, does not offend the Full Faith and Credit Clause. *Id.* at 21. If this court's inquiry shows that the issue of personal jurisdiction was "fully and fairly litigated and finally decided in the court that rendered the original judgment," then this court may not reexamine the issue of personal jurisdiction decided in the foreign court. *Durfee v. Duke*, 375 U.S. 106, 111 (1963); *Bloodworth v. Ellis*, 221 Va. at 21.

During the June 15, 1992, hearing, McLeod, Alexander introduced a number of pleadings from the Texas state and federal courts. They show that Quarles raised the defense of lack of personal jurisdiction in both courts. Neither the docket sheet nor any of the pleadings introduced indicate that the issue of personal jurisdiction of either court over Quarles was ever litigated. Early in the suit, both sides filed motions for summary judgment. In addition, the federal court, on its own motion, remanded the case back to state court on the basis that removal had been untimely. However, that order was later vacated when the defendant demonstrated that the removal was timely. The

federal court's order vacating its earlier remand also denied cross motions for summary judgment. In addition, the order included the following sentence. "All other pending motions, if any, are denied." This order was entered on February 21, 1989.

Shortly after the entry of the February 21, 1989, order, the District Judge referred the discovery disputes to a magistrate who, on April 3, 1989, rendered an opinion recommending that Quarles's answer be stricken and that default judgment be entered in favor of the plaintiff on the grounds that Quarles failed to comply with discovery. The District Judge affirmed the magistrate's recommendation and entered final judgment on April 26, 1989.

Thus, at no time did either Texas court determine whether there was personal jurisdiction over Quarles. Accordingly, that issue was not "fully and fairly litigated" in either Texas court. While the February 21, 1989, Order did include a statement denying all pending motions, there is nothing in the docket sheet or the pleadings to show that the issue of personal jurisdiction was ever considered. Similarly, the April 26, 1989, order denying all pending motions as "moot" is not a resolution on the merits. Under *Bloodworth v. Ellis, supra,* the issue is whether personal jurisdiction over Quarles was or was not "fully and fairly litigated" in the Texas court. Clearly it was not.

Having considered the testimony and exhibits presented on June 15, 1992, this Court concludes that a factual issue has been raised concerning whether the Texas courts had personal jurisdiction over Quarles to render a valid judgment. Accordingly, a hearing must be scheduled on that issue. The parties are reminded that the issue of personal jurisdiction in the Texas courts to render the judgment must be determined by examining the law of Texas. *Bloodworth v. Ellis*, 221 Va. at 22. This should include, if appropriate under Texas law, whether Quarles waived the defense of lack of personal jurisdiction by not preserving the point on appeal.

A praecipe should be filed to call this matter at the July 20, 1992, docket call for setting a hearing on the issue of personal jurisdiction.

July 19, 1993

In this action, the defendant, Fred H. Quarles (hereafter Quarles) seeks to set aside a foreign judgment recorded in Virginia in the Clerk's Office of this Court. More specifically, Quarles claims that a judgment rendered against him on August 23, 1990, in the United

States District Court for the Southern District of Texas is void on the ground that that Court did not have personal jurisdiction over Quarles to be able to render a valid judgment against him. This case has a long history in this court as well as in the Texas courts.

An evidentiary hearing was held in this action on June 15, 1992. Based on the evidence presented, I issued a letter opinion on July 1, 1992, in which I held that Quarles was permitted to challenge in this court the Texas judgment as void because the Texas courts had never litigated and decided the question of whether those courts had personal jurisdiction over Quarles. *See, Bloodsworth v. Ellis*, 221 Va. 18, 21 (1980). A second hearing was held on March 15, 1993. During this hearing, McLeod, Alexander, Powel & Apffel, P.C. (hereafter McLeod, Alexander) raised two additional arguments in addition to its argument that the Texas courts did have personal jurisdiction over Quarles. The first argument was that Quarles's pleadings in the Texas litigation did not properly raise the defense of lack of personal jurisdiction. McLeod, Alexander also argued that Quarles's conduct in the Texas litigation constituted a waiver of any defense that he may have had.

The evidence shows that while the material facts are not seriously in dispute, the procedural history of this litigation and the Texas litigation is complicated and requires a somewhat lengthy recitation.

### Procedural History

This dispute can be traced back to May of 1982 with the filing of a suit in the District Court of Galveston County, Texas, styled *T. J. Falgout, Jr. v. Omni International Corporation, et al.* One of the defendants in that action was Commonwealth Airlines, Inc., a Nevada Corporation. Although not the president of Commonwealth Airlines, Quarles was the founder and owner of all or most of the stock in the corporation. Quarles at all times relevant to these proceedings resided in Charlottesville, Virginia. To represent the interests of Commonwealth Airlines, Charlottesville attorney Robert Blodinger telephoned the Galveston, Texas, firm of McLeod, Alexander. Based on that conversation, McLeod, Alexander was retained to represent Commonwealth Airlines in the Texas suit.[1]

---

[1] The terms of the representation by McLeod, Alexander of Commonwealth Airlines, Inc., were set forth in a March 29, 1982, letter from Otto D. Hewett to Blodinger. Def. Exhibit No. 3.

Over the next several years, McLeod, Alexander provided legal services to Commonwealth Airlines generating fees and costs in the amount of $13,665.00. McLeod, Alexander submitted numerous bills to Blodinger, most of which went unpaid.[2] Blodinger wrote to McLeod, Alexander about the bills stating that he was forwarding the bills to Quarles for payment. McLeod, Alexander also received correspondence from Commonwealth Airlines' president, Mr. Thomas L. Belt, whose office was in Carson City, Nevada.[3]

McLeod, Alexander eventually filed suit for the outstanding fees in the District Court for Galveston County, Texas. Named as defendants were Commonwealth Airlines and Quarles. The suit claimed that both defendants had hired McLeod, Alexander to provide legal services in the *Falgout v. Omni* suit. McLeod, Alexander claimed that both defendants had "substantial" contact with the state of Texas and that both had transacted business in the state of Texas. Quarles filed an answer *pro se* in which he denied the allegations of the petition and also affirmatively pleaded a lack of personal jurisdiction over him by the Texas Court.[4] At the same time, Quarles filed a petition to remove the case to the United States District Court for the Southern District of Texas on the basis of diversity jurisdiction. Quarles's petition for removal also requested a jury trial.

According to the docket sheet from the Clerk's Office of the United States District Court for the Southern District of Texas, as well as various pleadings, the course of the Texas litigation proceeded as follows. The removal petition was filed on July 20, 1987. Immediately a "Docket Control Order" was entered establishing cutoff dates and a trial date of August 8, 1988. Nothing occurred until March 23, 1988, when Quarles filed a motion for a protective order alleging discovery abuses by McLeod, Alexander. McLeod, Alexander filed a cross motion to compel responses to its discovery requests and requested sanctions against Quarles. On April 29, 1988, Mr. Gerson Bloom entered

---

[2] McLeod, Alexander submitted copies of three checks, each in the amount of $189.00 drawn on the account of Commonwealth Capital Corporation representing payments for fees incurred through December, 1982. Apparently, Commonwealth Capital Corporation was another corporation owned by Quarles.

[3] Commonwealth Airlines, Inc., was chartered by the State of Nevada.

[4] Apparently, Commonwealth Airlines never filed a responsive pleading to the suit. It is not clear from the record whether Commonwealth Airlines was even served.

an appearance and became counsel of record for Quarles. On the same day, a hearing was held on Quarles's motions, and the motions were denied. A new Docket Control Order was entered with a trial date of September 12, 1988. This was later extended by joint motion with a new Docket Control Order entered on August 3, 1988, setting a trial date of January 9, 1989.[5]

On August 16, 1988, McLeod, Alexander filed an amended complaint. In comparing the original petition with the amended complaint, the additional allegations by McLeod, Alexander were primarily directed to the relationship between Commonwealth Airlines and Quarles. It essentially alleged that Quarles was the alter ego of Commonwealth Airlines.[6] Quarles, by his attorney, Gerson Bloom, filed an answer to the amended complaint again denying all substantive allegations in the amended complaint. Unlike the answer filed by Quarles to the original petition filed in state court, the answer to the amended complaint did not contain affirmative defenses including an assertion that the Texas court lacked jurisdiction over Quarles. In paragraph 6 of the answer, Quarles denied that either he or Commonwealth Airlines transacted business in Texas.

In November of 1988, McLeod, Alexander filed a motion for summary judgment. Quarles filed a response to the motion and filed a cross motion for summary judgment. The issue raised in the cross motion for summary judgment dealt with the question of agency between Quarles and Commonwealth Airlines. Before the cross motions for summary judgment were heard, the federal court, apparently *sua sponte*, remanded the case back to the state court in Galveston County on the ground the case had been improvidently removed. Quarles filed a motion to reconsider. On February 21, 1989, the federal court vacated the remand order, retained jurisdiction, denied the cross motions for summary judgment, and denied all other pending motions.[7]

On March 7, 1989, McLeod, Alexander filed a motion to compel discovery and a motion for sanctions. The matter was referred to a

---

[5] According to the docket sheet, each of the docket control orders had cutoff dates prior to the trial date for motions, expert witness designation, discovery, and the like.

[6] Most of Quarles's objections to McLeod, Alexander's discovery requests were directed to interrogatories and document production requests that focused on the relationship between Quarles and Commonwealth Airlines.

[7] It is not clear from either the pleadings or the docket sheet whether there were any pending motions at the time and what was thereby denied in the February 21, 1989,

magistrate, who responded with a report to the federal court recommending that Quarles's answer be stricken and that default judgment be entered in favor of McLeod, Alexander. The basis for the recommendation was that Quarles had not responded to numerous discovery requests of McLeod, Alexander and that he had acted in bad faith in failing to respond. Quarles filed an objection to the report and on April 26, 1989, the federal court approved the report, struck the answer filed by Quarles, and entered default judgment against Quarles in the amount of $11,725.97. In that order, the federal court also denied all pending motions on the basis that they were "moot."

Quarles appealed the final order to the United States Court of Appeals for the Fifth Circuit. On February 28, 1990, the Fifth Circuit affirmed the District Court's imposition of sanctions for discovery abuse including the entry of a default judgment against Quarles. *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482 (5th Cir. 1990). Noting that the lower court had taxed $44,160.00 in additional attorney fees against Quarles in a suit to recover less than $12,000.00 and that Quarles did not have an opportunity to be heard on the taxation of those costs, the Fifth Circuit remanded the case to the trial court to conduct a hearing as to what amount of attorney's fees could be taxed against Quarles.[8] On remand, the matter was again referred to a magistrate for a hearing on attorney's fees. Before the hearing was held, Quarles filed a motion to vacate the judgment under FRCP Rule 60(b) on the basis of newly-discovered evidence.[9] The magistrate issued a report recommending that Quarles's motion to vacate the judgment be denied and that the amount of $30,960.00 be taxed as attorney's fees against Quarles. The District Court accepted the recommendation and on August 23, 1990, entered a final judgment

---

order. There was no pending motion by Quarles to dismiss for lack of personal jurisdiction. Such a motion is expressly permitted by FRCP 12(b).

[8] Under Texas law, a successful litigant in an action of the nature brought by McLeod, Alexander can recover attorney's fees incurred in prosecuting the action.

[9] In addition to arguing that the court should consider new evidence, Quarles's Rule 60(b) motion contended that McLeod, Alexander had committed fraud, misrepresentation, and misconduct based on a December 22, 1988, affidavit filed in support of McLeod, Alexander's support of motion for summary judgment. Quarles argued that a deposition by Robert Blodinger taken on December 20, 1988, refutes the portion of Hewitt's affidavit where Hewitt claimed that in May of 1982, Blodinger told Hewitt that Quarles was a principal of Commonwealth Airlines.

order awarding judgment against Quarles in the amount of $11,725.97 with interest plus $31,537.50 taxed as attorney's fees and costs.

Following the entry of the order, Quarles filed a motion for a new trial. The basis for the request was that the District Court had not previously ruled on Quarles's Rule 60(b) motion and that the District Court could not refer a 60(b) motion to a magistrate. The motion was denied. Quarles proceeded with a second appeal to the United States Court of Appeals for the Fifth Circuit which issued an opinion on March 8, 1991. The Court affirmed the decision of the trial court in all respects. *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 925 F.2d 853 (5th Cir. 1991).

On September 27, 1991, McLeod, Alexander docketed the August 23, 1990, judgment order entered by the Texas federal court in the Clerk's office of this Court in accordance with Va. Code § 8.01–465.1, the Uniform Enforcement of Foreign Judgments Act. Quarles moved to set aside the judgment on the grounds that the Texas judgment should not be given full faith and credit because the Texas Court did not have personal jurisdiction over Quarles. On April 2, 1992, I ruled that Quarles's motion should be treated as an action under Va. Code § 8.01–428(A) as the claim by Quarles was that the Texas judgment was void because that court lacked jurisdiction over his person.

### Decision

There are three issues to be addressed. The first is whether Quarles preserved the defense of lack of personal jurisdiction in the pleadings filed in the Texas litigation. Assuming that the pleadings properly raised the defense, the second issue is whether Quarles waived the defense by his conduct during the Texas litigation. If he did not, the third question is whether Quarles had subjected himself to the jurisdiction of the Texas Courts as of June 3, 1987, the date McLeod, Alexander filed its suit for attorney's fees.

Based on the evidence presented and having considered the arguments of counsel, this court finds for purposes of this case it will be assumed that Quarles properly pleaded and/or preserved the issue of lack of personal jurisdiction in the Texas courts. Further, I find that had the issue been addressed in Texas, that the Texas courts would have found that Quarles had not subjected himself to suit in Texas. However, I also find that Quarles by his conduct in the Texas litigation waived his right to assert that defense.

### Did Quarles Properly Plead the Defense of Lack of Personal Jurisdiction?

When Quarles filed his answer to the original petition filed in the District Court of Galveston County, Texas, he expressly raised as an affirmative defense that the Texas courts could not assert personal jurisdiction over Quarles in his individual capacity. The defense of lack of personal jurisdiction is set forth as his "First Defense" in his answer to the petition. However, it is not as clear whether he properly pleaded the defense of lack of personal jurisdiction when he filed an answer in federal court to the amended complaint thirteen months after the original petition was filed in state court. In Quarles's answer to the amended complaint, Quarles did not raise lack of personal jurisdiction as an affirmative defense. He simply denied that either he or Commonwealth Airlines had transacted business in Texas.

Quarles's answer to the amended complaint must be considered under the Federal Rules of Civil Procedure. FRCP Rule 8(b) requires a party to "state in short and plain terms the party's defenses to each claim asserted . . . ." FRCP Rule 12(b) requires that every defense "be asserted in the responsive pleading . . ." except that certain defenses may be made by motion which includes the defense of lack of personal jurisdiction. While a strong argument can be made that Quarles's answer to the amended complaint did not adequately set forth and therefore preserve the defense of lack of personal jurisdiction, this court recognizes that federal courts follow the rule that pleadings should be liberally construed and that a federal court might find that paragraph 6 of Quarles's answer to the amended complaint properly preserved the defense of lack of personal jurisdiction. C. Wright & A. Miller, *Federal Practice and Procedure, Civil 2d*, § 1286, at 548–549.

Accordingly, for purposes of this proceeding, this court will assume that Quarles properly preserved the defense of lack of personal jurisdiction in his pleadings.

### Did the Texas Courts Have Personal Jurisdiction Over Quarles?

A Texas Court may exercise personal jurisdiction over a nonresident if two conditions are met: (1) Does the "long-arm" statute authorize the exercise of jurisdiction; and (2) Would the exercise of jurisdiction comport with due process? *Hall v. Helicopteros Nacionales de Colombia, S.A. (Helicol)*, 638 S.W.2d 870 (Tex. 1982), *rev'd on other grounds*, 466 U.S. 408, 106 S. Ct. 1868, 80 L. Ed. 2d 404 (1984).

The Texas "long-arm" statute authorizes the exercise of personal jurisdiction for non-residents who conduct business in Texas. *Schlobohm v. Schapiro*, 784 S.W.2d 355, 356 (Tex. 1990). See Tex. Civ. Prac. & Rem. Code Ann. § 17.042 (Vernon 1986).

There was no evidence presented that Quarles transacted business in Texas or committed any other act which would bring him under the Texas "long-arm" statute. The credible evidence before this court does not establish that Quarles was involved in the hiring of McLeod, Alexander to defend Commonwealth Airlines in May of 1982. While it was never clear why Commonwealth Airlines was named as a defendant in the 1982 Texas suit, it is clear that Quarles was not a party to that litigation. The president of Commonwealth Airlines was Thomas L. Belt. Commonwealth Airlines was a Nevada corporation with an office in Carson City, Nevada. Quarles was vice-president and secretary of Commonwealth Airlines and lived in Charlottesville, Virginia. Quarles did not participate in the litigation against Commonwealth Airlines while it was represented by McLeod, Alexander. He never went to Texas during the course of that litigation. His testimony was that he never participated in that suit nor conducted any business in Texas. This evidence was unrefuted as no one from McLeod, Alexander testified in this case.

In support of its claim that Texas courts had personal jurisdiction over Quarles, McLeod, Alexander introduced a December 22, 1988, affidavit of Otto D. Hewitt, III, an attorney with McLeod, Alexander. In that affidavit, Hewitt claimed that he was contacted by Blodinger to represent the interest of "Fred Quarles and Commonwealth Airlines . . ." in the *Falgout* litigation. The affidavit set forth the terms of the representation agreement between McLeod, Alexander and Blodinger with repeated references to "defendants" as if both Quarles and Commonwealth Airlines had been named as defendants in the *Falgout* litigation. This affidavit stands in stark contrast to the representation agreement written by McLeod, Alexander and sent to Blodinger on March 29, 1982. The letter refers solely to Commonwealth Airlines and makes no reference whatsoever to Quarles. The letter makes it clear that McLeod, Alexander had agreed only to represent the interest of their "mutual client Commonwealth" in the Texas litigation.

Apparently recognizing that there was no evidence that Quarles had individually transacted business in Texas to subject himself to the jurisdiction of the Texas Courts, McLeod, Alexander argues that the

Texas Courts had jurisdiction over Quarles on the ground that Quarles, through his agent Blodinger, contracted by mail with McLeod, Alexander to perform legal services in Texas. However, while there was correspondence in which Blodinger wrote to Quarles or sent copies of letters to Quarles requesting payment of the McLeod, Alexander bills, this is insufficient to establish a principal-agent relationship between Blodinger and Quarles. Further, there is nothing in the record to support McLeod, Alexander's argument that it in some way was misled by either Blodinger or Quarles such that Quarles is estopped from denying the principal-agency relationship. Finally, there is nothing in the record to support McLeod, Alexander's argument that Blodinger informed attorneys at McLeod, Alexander that he was Quarles's agent and was acting on Quarles's behalf when he retained McLeod, Alexander.

The final argument to support a claim of personal jurisdiction over Quarles rests upon McLeod, Alexander's claim that Commonwealth Airlines was the "alter ego" of Quarles or that this court should ignore the corporate status of Commonwealth Airlines because Quarles was its sole stockholder. However, these arguments do not go to the question of personal jurisdiction, but rather to the question of whether any judgment validly rendered against Commonwealth Airlines could be collected against Quarles. The fact that McLeod, Alexander might ultimately prove that Quarles should be liable for any judgment against Commonwealth Airlines is a different matter from whether Quarles is subject to personal jurisdiction in Texas based on facts that, if proven, might establish his liability either as a corporate agent or under some other theory to pierce the corporate veil of Commonwealth Airlines.

In summary, it is this Court's finding that the Texas Courts lacked personal jurisdiction over Quarles in his individual capacity when the original petition was filed in June of 1987 in the District Court of Galveston County, Texas.

### Did Quarles Waive the Defense of Lack of Personal Jurisdiction by His Conduct in the Texas Litigation?

The third and most troublesome issue is the question of whether Quarles, assuming that he properly pleaded the defense of lack of personal jurisdiction, waived that defense by his conduct in that litigation. Such a defense may be waived "by failure [to] assert [it] seasonably, by formal submission in a cause, or by submission through

conduct." *Neirbo Co. v. Bethlehem Corp.*, 308 U.S. 165, 168, 60 S. Ct. 153, 155, 84 L. Ed. 167 (1939). For purposes of this case, I have assumed that the defense was asserted seasonably. Also, Quarles did not "formally" submit to the jurisdiction of the Texas courts. The sole question here is whether he submitted to the jurisdiction of those courts through conduct.

When the suit for attorney's fees was filed by McLeod, Alexander, Quarles had to make a decision. If he wished, he could have ignored the suit in Texas, risked a default judgment, and then challenged the jurisdictional grounds of the Texas judgment in a collateral proceeding when an effort was made to enforce that judgment in Virginia or in any other state where Quarles had assets. *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinea*, 456 U.S. 694, 706 (1982). Or, he could enter an appearance and contest the power of the Texas courts to assert jurisdiction over his person. Quarles chose to appear in Texas to defend the suit and, at least initially, to contest whether the Texas state court had jurisdiction over his person. However, after raising the defense of lack of personal jurisdiction in his response to the initial petition, Quarles undertook no action whatsoever to have the state or the federal court address the question of whether Quarles was subject to suit in Texas. When Quarles filed his answer to the original petition, he immediately removed the case to federal court. Upon removal, a "Docket Control Order" was entered on July 20, 1987, establishing cutoff dates for a number of procedural matters. One of those was a cutoff date of May 2, 1988, for "dispositive motions" which would have included a motion to dismiss for lack of personal jurisdiction.

After the matter was removed by Quarles, his first motion was for a protective order against McLeod, Alexander regarding discovery matters and a request for sanctions. After the matter was referred to a magistrate, McLeod, Alexander filed a cross motion to compel production. It was then when an attorney entered an appearance on behalf of Quarles. Quarles's motions were denied, and a new Docket Control Order was entered which allowed dispositive motions to be filed "at any time." The Docket Control Order was later amended by agreement with dispositive motions to be filed by November 24, 1988. Shortly after the entry of the new Docket Control Order, McLeod, Alexander filed an amended complaint which addressed the question of the relationship between Quarles and Commonwealth Airlines and argued that one was the alter ego of the other. Quarles's answer to this amended

complaint did not affirmatively raise the defense of lack of personal jurisdiction but simply denied that either he or Commonwealth Airlines did business in Texas.

After the date had passed for the filing of dispositive motions, McLeod, Alexander moved for summary judgment. Quarles filed a cross motion for summary judgment and requested sanctions against McLeod, Alexander. Before the summary judgment motions could be heard, the federal court remanded the case back to state court but then vacated that remand upon Quarles's motion. At the same time, the Court denied the cross motions for summary judgment.

The matter was then referred to a magistrate on McLeod, Alexander's motion for sanctions against Quarles for failure to respond to discovery requests. On April 3, 1989, the magistrate recommended that default judgment be entered in favor of McLeod, Alexander based upon Quarles's refusal to respond to discovery requests. Quarles's objections to that report were rejected, and the federal court entered judgment against Quarles on April 26, 1989.

Rather than asking the trial court for relief under FRCP 60 or requesting the court to address the question of lack of personal jurisdiction, Quarles appealed the order to the United States Court of Appeals for the Fifth Circuit. Nothing in the opinion of the Fifth Circuit indicates that Quarles asserted lack of personal jurisdiction or that he complained that he never had an opportunity to assert that defense at the trial level. After the case was remanded to the trial court for a hearing on attorney's fees, Quarles never asked the trial court to consider the question whether it lacked jurisdiction over Quarles. Rather, Quarles filed a motion to vacate the judgment under FRCP 60 alleging fraud, misrepresentation and asked that the record be reopened for newly-discovered evidence. After that motion was denied and the federal court accepted the recommendation of the magistrate to tax attorney's fees in the amount of $30,960.00, Quarles filed another post judgment motion, this time asking for a new trial. In this motion, Quarles challenged the authority of the magistrate to rule on his prior Rule 60(b) motion. When this motion was denied, Quarles filed another appeal to the Fifth Circuit arguing solely the authority of the magistrate to hear the Rule 60(b) motion.

The only case relied upon by Quarles in support of his argument that his conduct did not constitute a waiver of the defense of personal jurisdiction is *Wilson v. Kuwahara Co., Ltd.*, 717 F. Supp. 525 (W.D.

Mich. 1989). In *Wilson* the court held that a litigant which had raised the defense of lack of personal jurisdiction in its answer did not waive that defense by engaging in a moderate amount of pre-trial activity for a relatively short period of time. While fourteen months passed between the filing of the suit and the request to argue the jurisdictional defense, the distinguishing characteristic in *Wilson* is the relatively little activity that had gone on before the defense was raised. Here, the activity was substantial and included discovery disputes, cross motions for summary judgments, further discovery disputes, and two appeals.

The defense of lack of personal jurisdiction has constitutional dimensions involving due process. Thus, not allowing a party to assert the defense should not be done lightly. However, courts must balance a litigant's interest in preserving the defense with conduct which is inconsistent with the defense. Litigants should not be permitted to participate in a suit to the extent that Quarles did so in Texas, sit back to see if he is successful, and if not, later claim in a collateral proceeding that any judgment rendered against him should not be enforced because the foreign court in which he was so actively involved had no jurisdiction over his person.

There is no other conclusion that can be drawn other than Quarles chose to participate in the Texas suit in hopes of prevailing on whatever theory he sought to present. If he seriously contested the power of the Texas courts to exercise jurisdiction over his person, he never exhibited it after he filed his original answer to the initial suit. From the time suit was filed in June of 1987, until the Fifth Circuit handed down its second opinion in March of 1991, the record does not show that Quarles ever pressed the issue of the jurisdiction of the courts in Texas.

Because Quarles failed to contest personal jurisdiction, this court concludes that by his conduct, Quarles has waived the defense of lack of personal jurisdiction. Waiver is not found lightly, particularly because the evidence demonstrates that the Texas courts would likely have sustained such a defense.

Courts are over-burdened by the volume of cases in the state and federal courts. While courts should be cautious when exercising jurisdiction over cases or over individuals where jurisdiction should not be exercised, the efficient administration of justice mandates that jurisdictional defenses be raised in a timely manner. To permit Quarles to now raise the defense of lack of personal jurisdiction in Virginia after pro-

ceeding through almost four years of litigation in Texas without having those courts address their power to litigate disputes involving him would be inconsistent with notions of fairness and the prompt resolution of disputes.

In summary, this court finds that Quarles's delay in challenging the exercise of the Texas Courts to assert personal jurisdiction over him constitutes a waiver of that defense, and he should not be permitted to litigate that matter in Virginia.

For those reasons, this Court denies the motion of Quarles to set aside the judgment of the United States District Court of the Southern District of Texas entered on August 23, 1990, and recorded in the Clerk's Office of the Circuit Court of the City of Charlottesville on October 18, 1991.

October 13, 1993

I have reviewed the submissions on the defendant's Motion for Leave to Appeal the Order entered on August 17, 1993.

Under § 8.01–428(C), this Court may grant a party leave to note an appeal if certain prerequisites are met. To obtain relief under § 8.01–428(C), a party must not have been in default, must not have been notified of the entry of a final order, must demonstrate that the lack of notification did not result from a failure to exercise due diligence and that the party has been denied an opportunity to appeal due to the lack of notification of the entry of a final order.

The Final Order was signed on August 17, 1993. On the same day or the day after, the Order was delivered to the Clerk's Office. Within thirty days of the entry of the Order, both parties, through their attorneys, inquired at the Clerk's Office as to the status of the Order including whether the Order had been entered. Both attorneys were incorrectly told by the Clerk's Office that the Order had not yet been entered.

Later, apparently through Mr. Payne's efforts, the signed Order was found in the Clerk's Office on September 16, 1993. Meanwhile, Mr. Musselman's office had asked the Clerk's Office about the status of the Order on September 10 and asked again on September 17, 1993. The response from the Clerk's Office on both occasions was that the Order had not yet been entered. On September 20, 1993, another inquiry was made to the Clerk's Office, and Mr. Musselman was then told that the

Order had been entered on August 17, 1993. By that time, the defendant's time for filing a Notice of Appeal had passed.

Based on the submissions, I find that the defendant in this case is a party who was not in default, was not notified of the entry of the Order, and did not learn of the entry of the Order until September 20, 1993. I am further satisfied that the defendant's lack of notice of entry of the Order did not result from a failure on his part to exercise due diligence. If someone inquires at the Clerk's Office as to the status of an Order, particularly of a Final Order, that person is entitled to rely upon the representations made by the Clerk's Office in response to that request. Here, had Mr. Musselman's office been notified correctly on September 10, 1993, that the Order had been entered on August 17, 1993, then the defendant could have filed a timely Notice of Appeal.

Accordingly, the defendant is granted the relief requested under § 8.01–428(C). Mr. Musselman is requested to prepare and circulate an order in which the defendant is granted twenty days from the date of the entry of the order to perfect an appeal. The order prepared by Mr. Musselman shall include the specific direction that the Clerk is to mail a copy of the order to counsel of record whose names and addresses shall appear on the order.